UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LAVONTE WILDERNESS,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>L. HASKELL, et al.,<br><br>　　　　Defendants. | CAUSE NO. 3:23-CV-207-PPS |

OPINION AND ORDER

Lavonte Wilderness, a prisoner without a lawyer, is proceeding in this case on three claims. First, he is proceeding "against Sergeant Larry Haskell and Officer Marshall Sanders in their personal capacities for monetary damages for using excessive force against him in violation of the Eighth Amendment on or about March 24, 2021[.]" ECF 34 at 5. Second, are his claims "against Officer Chelsea Grams, Officer Shantanae Frazie[r], Officer Andreana Ramos, Sergeant Erica Hilliker, Officer Cassandra Guydon, and Officer Anthony Sims in their personal capacities for monetary damages under the Eighth Amendment for failing to intervene in the use of excessive force by Sergeant Haskell and Officer Sanders[.]" *Id.* Third are his claims "against Sergeant Haskell and Officer Sanders in their personal capacities for monetary damages for violating his rights under the First Amendment by retaliating against him for his statements

indicating that he intended to file a grievance[.]" *Id.* at 6. Both Wilderness and the defendants now seek summary judgment. ECF 96,[1] ECF 102.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

<u>*Excessive force claim against Sgt. Haskell and Officer Sanders*</u>

Wilderness claims Haskell and Sanders used "excessive force against him in violation of the Eighth Amendment on or about March 24, 2021[.]" ECF 34 at 5. The defendants argue summary judgment is warranted in their favor on this claim because they used force in a good-faith effort to maintain and restore discipline. ECF 103 at 3-5. The problem with the argument is that I would have to accept their version of the events in order to grant summary judgment in their favor. Of course, that's not how it works.

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" on prisoners. *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citation omitted). In order to survive summary judgment, a plaintiff must put forth evidence that "support[s] a

---

[1] Wilderness' summary judgment motion provides evidence and asks the Court to enter summary judgment in his favor but does not include any arguments explaining why summary judgment is warranted in his favor on any of his claims. *See* ECF 96.

2

reliable inference of wantonness in the infliction of pain[.]" *Id.* at 322. The core requirement for an excessive force claim is that the defendants "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (citation omitted). In determining whether the intent was malicious, relevant factors include how much force was needed versus how much was actually used; the extent of injury inflicted; whether the force was needed because of a risk to someone's safety; and whether the officers made efforts to limit the severity of the force. *McCottrell v. White*, 933 F.3d 651, 663 (7th Cir. 2019).

The parties provide substantially different versions of the relevant facts thus precluding summary judgment either way. First, Sgt. Haskell provides an affidavit, in which he attests to the following facts: On March 24, 2021, Officer Sanders was attempting to place restraints on Wilderness in order to "switch out the showers." ECF 102-1 at 1. Officer Sanders secured one of Wilderness' arms in handcuffs and was attempting to cuff up the other arm when Wilderness snatched his arms away from the cuff port and into the shower with the handcuff secured to one arm. *Id.* Officer Sanders ordered Wilderness to turn around and place his hands outside of the cuff port but Wilderness refused. *Id.* Officer Sanders then deployed a one-second burst of OC spray against Wilderness and asked Sgt. Haskell for assistance. *Id.* Sgt. Haskell ordered Wilderness to cuff up, and Wilderness complied. *Id.* at 2. Sgt. Haskell did not deploy OC spray on Wilderness. *Id.* Sgt. Haskell and Officer Grams then escorted Wilderness to the medical unit for decontamination. *Id.* During the escort, Wilderness tried to headbutt Officer Grams. *Id.* Sgt. Haskell attempted to reach out his arm to prevent

3

Wilderness from headbutting Officer Grams, at which time Wilderness bit Sgt. Haskell's left arm and would not let go. *Id.* Sgt. Haskell used his knee to bring Wilderness to the ground, but Wilderness continued biting his arm. *Id.* Sgt. Haskell used an open-handed palm strike, which caused Wilderness to release his teeth grip. *Id.* Sgt. Haskell then helped Wilderness off the ground and finished escorting him to the medical unit. *Id.* at 2-3.

Wilderness tells an entirely different story. He says he was in the shower when Officer Sanders ordered him to "butterfly cuff-up" his wrists. ECF 108-2 at 2. Wilderness informed Officer Sanders he had a sprained wrist, at which point Officer Sanders forcibly placed Wilderness' left wrist in handcuffs and violently twisted his right wrist. *Id.* Wilderness pulled his wrists away in pain and informed Officer Sanders he would be filing a grievance and a lawsuit, at which point Officer Sanders became angry and pulled out a cannister of OC spray. *Id.* Wilderness walked toward the cuff port to submit to restraints, whereupon Officer Sanders deployed OC spray into his face. *Id.* Wilderness never refused to be placed in hand restraints. *Id.* Officer Sanders then left and returned with Sgt. Haskell, and as Wilderness approached the cuff port and again "invoked his First Amendment right[s]" both officers sprayed him once again with OC spray until they emptied both cannisters. *Id.* at 3. Wilderness was cuffed by Officer Sims and removed from the shower. *Id.* All of the defendants in this lawsuit were present outside of the shower as Wilderness was placed in leg restraints and stomach chains. *Id.* As the correctional officers began escorting Wilderness toward the exit, Sgt. Haskell violently twisted Wilderness' wrist, which caused him to "reflex[]" in

4

pain. *Id.* at 3-4. Wilderness never attempted to headbutt any officer. *Id.* Sgt. Haskell then threw Wilderness to the ground, and Sgt. Haskell and Officer Sanders began punching and kicking him 30 or 40 times each while he was in hand and leg restraints. *Id.* Sgt. Haskell also stepped on Wilderness' hand and broke a bone. *Id.* Wilderness started seeing blood and going unconscious, at which point he got scared and bit Sgt. Haskell on the arm to deter some of the punches. *Id.* Eventually, Officer Sanders and Sgt. Haskell picked Wilderness up off the ground and began escorting him again while continuing to punch him in his ribs. *Id.* at 4-5. Additional officers arrived and finished escorting Wilderness to the medical unit. *Id.* at 5.

As one can see, the parties tell radically different versions of the same event. Here, a reasonable jury could credit Wilderness' version of events and conclude Officer Sanders and Sgt. Haskell used excessive force by spraying him with entire cannisters of OC spray while he was not actively resisting and striking him repeatedly while he was in hand and leg restraints. *See Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984) (the use of OC spray "*in small amounts* may be a necessary prison technique if a prisoner refuses after adequate warnings" to comply with an order) (emphasis added) (citation omitted); *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004) (force "without penological justification" is excessive) (citation omitted); *Payne v. Allen*, No. 23-CV-598, 2025 WL 901560, at *2 (N.D. Ind. Mar. 24, 2025) (a reasonable jury could conclude a correctional officer used excessive force against an inmate by striking him in the chest and spraying him with OC spray while he was not actively resisting). Of course, a reasonable jury could also credit Sgt. Haskell's version of events and conclude the amount of force used

5

was done in a good faith effort to restore order after Wilderness headbutted Officer Grams and bit Sgt. Haskell. The surveillance footage of this incident does not discredit either party's version of events, as it shows only a small portion of the escort and does not show what transpired in the shower. Accordingly, because there are disputed material facts whether Sgt. Haskell and Officer Sanders used excessive force against Wilderness, summary judgment is not warranted in favor of either party.

*Failure to intervene claim against Officer Grams, Officer Frazier, Officer Ramos, Sgt. Hilliker, Officer Guydon, and Officer Sims*

Wilderness is proceeding against Officer Grams, Officer Frazier, Officer Ramos, Sgt. Hilliker, Officer Guydon, and Officer Sims "for failing to intervene in the use of excessive force by Sergeant Haskell and Officer Sanders[.]" ECF 34 at 5. State actors "who have a realistic opportunity to step forward and prevent a fellow [state actor] from violating a plaintiff's rights through the use of excessive force but fail to do so" may be held liable for failure to intervene. *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)). A bystander officer may be held liable for the excessive force of another officer if the bystander officer: "(1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring." *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009).

Here, there is insufficient evidence in the record by which a reasonable jury could conclude that Officer Grams, Officer Frazier, Officer Ramos, Sgt. Hilliker, Officer Guydon, and Officer Sims had a realistic opportunity to prevent Sgt. Haskell and

Officer Sanders from using excessive force against Wilderness. Specifically, Wilderness attests to the following facts: After Sgt. Haskell and Officer Sanders sprayed him with OC spray in the shower and he washed the OC spray from his face, Officer Sims appeared at the cuff port, placed his hands in restraints, and escorted him from the shower. ECF 108-2 at 3. Wilderness attests that Officer Sims first appeared at the cuff port only *after* the application of OC spray, and there is no evidence indicating where Officer Sims or the other defendants were located *during* the application of OC spray. Once Wilderness was escorted out of the shower by Officer Sims, the other defendants were "standing by" outside of the shower. *Id.* Officer Sims and Officer Grams then began escorting Wilderness toward the exit door, at which point Sgt. Haskell twisted Wilderness' wrist. *Id.* There is no evidence Officer Sims and Officer Grams were aware Sgt. Haskell had twisted Wilderness' wrist. At some point during the escort, Sgt. Haskell threw Wilderness to the ground and Sgt. Haskell and Officer Sanders began punching and kicking Wilderness while he was on the ground. *Id.* at 4. Wilderness attests that Sgt. Haskell was on his "right side" and Officer Sanders was on his "left side" during this use of force, but he does not explain where any of the other defendants were located. *Id.* Sgt. Haskell and Officer Sanders then picked Wilderness up from the ground and walked him outside. *Id.*

Thus, Wilderness alleges Sgt. Haskell and Officer Sanders used excessive force against him on three occasions: (1) by spraying him with OC spray in the shower; (2) by twisting his wrist during the escort from the shower; and (3) by throwing him to the ground and repeatedly striking and kicking him. Because there is no evidence

7

indicating where any of the defendants were located during the first and third applications of force, no reasonably jury could conclude they had a realistic opportunity to prevent those acts from occurring. *See McCracken v. Kirby*, No. 3:23-CV-908-PPS-AZ, 2025 WL 2417725, at *2 (N.D. Ind. Aug. 20, 2025) (because it was unclear from the record where the defendant was located when the use of force occurred, no reasonable jury could conclude the defendant had a realistic opportunity to prevent that use of force). And while Wilderness alleges that Officer Sims and Officer Grams were present during the second application of force, there is no evidence they knew Sgt. Haskell was going to twist Wilderness' wrist or had any opportunity to prevent that use of force from occurring. *See Marshall v. JP Morgan Chase Bank*, No. 3:11-CV-332, 2015 WL 1455165, at *6 (N.D. Ind. Mar. 30, 2015) (two escorting officers did not have a "realistic opportunity to prevent" a third escorting officer from stomping on the plaintiff's foot during the escort, as there was no evidence they knew the officer was going to stomp on the plaintiff's foot or had any chance to prevent it from happening). Thus, because there is insufficient evidence in the record by which a reasonable jury could conclude that any of the defendants had a realistic opportunity to prevent Sgt. Haskell and Officer Sanders from using excessive force against Wilderness, summary judgment is warranted in favor of the defendants on this claim.

*First Amendment retaliation claim*

Wilderness is proceeding against Sgt. Haskell and Officer Sanders "for violating his rights under the First Amendment by retaliating against him for his statements indicating that he intended to file a grievance[.]" ECF 34 at 6. Specifically, Wilderness

8

alleged in his complaint that he told the officers he intended to file a grievance about the rough manner in which he had been handled, and they responded by spraying him with pepper spray and severely beating him while he was not posing a security risk.

An allegation of First Amendment retaliation requires the plaintiff to show that "(1) he engaged in activity protected by the First Amendment;[2] (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). To satisfy the third element, Wilderness must show, based on admissible evidence, "a causal link between the protected act and the alleged retaliation." *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (internal quotations omitted). A plaintiff can meet that burden by providing circumstantial evidence, which includes evidence: (1) of "suspicious timing" of the defendants' adverse action; and (2) that the defendants' proffered reason for the adverse action was pretextual. *Galvan v. Indiana*, 117 F.4th 935, 939 (7th Cir. 2024) )internal quotations omitted).

The defendants argue summary judgment is warranted in their favor on this claim because their conduct was motivated entirely by a need to regain control over Wilderness and was not motivated in any way by Wilderness' First Amendment activity. ECF 103 at 6-7. In response, Wilderness attests that Sgt. Haskell and Officer Sanders deployed OC spray on him in retaliation for him invoking his First

---

[2] The defendants concede that filing a grievance is protected First Amendment activity.

9

Amendment rights because they deployed OC spray against him immediately after he stated he would file a grievance and when he was not actively resisting. ECF 108-2 at 2-3.

Here, a reasonable jury could credit Wilderness' testimony and conclude his protected First Amendment activity was "at least a motivating factor" in the defendants' decision to spray him with OC spray and use excessive force against him. Specifically, Wilderness has provided circumstantial evidence by which a reasonable jury could conclude the defendants acted with a retaliatory motive, as he testified that (1) the defendants acted with "suspicious timing," as they used excessive force against him immediately after he threatened to file a lawsuit, and (2) the defendants' proffered reason for using force was pretextual, as he was not actively resisting at the time of their use of force. *See Galvan*, 117 F.4th at 939; *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 314-15 (7th Cir. 2011) (a worker who handed his supervisor a note complaining of workplace discrimination and was immediately fired had established an inference of causation by way of suspicious timing); *Richards v. Perttu*, 96 F.4th 911, 919–20 (6th Cir. 2024) (an "inference of retaliatory motive" precluded summary judgment where the defendant took a retaliatory action "immediately after" the inmate attempted to file a grievance). Therefore, summary judgment is not warranted in favor of either party on this claim.

### *Qualified immunity*

Lastly, Sgt. Haskell and Officer Sanders argue they are entitled to qualified immunity because their actions did not violate any clearly established law. ECF 103 at

7-9. Specifically, they reference their above arguments and state "the specific circumstances discussed above demonstrate that all the Defendants acted reasonably and appropriately within the scope of their responsibility as correctional officers when confronted with unsafe circumstances as well as a direct physical assault by the plaintiff on Sgt. Haskell." *Id.* at 9. But this argument asks the court to construe the facts in favor of the defendants. As discussed above, there are disputed material facts regarding whether Sgt. Haskell and Officer Sanders acted "reasonably and appropriately." *See Walker v. Benjamin,* 293 F.3d 1030, 1037 (7th Cir. 2002) (recognizing that disputed material facts regarding the elements of a constitutional claim preclude dismissal based on qualified immunity); *Smith v. Finkley*, 10 F.4th 725, 729 (7th Cir. 2021) (holding that where the "qualified immunity decision depends upon and cannot be separated from" factual disputes, "which are integral to the merits of [the plaintiff's] claim," summary judgment on qualified immunity grounds is inappropriate).

If a factfinder were to credit Wilderness' version of events, it would be clear to a reasonable officer that Sgt. Haskell's and Officer Sanders' alleged conduct of (1) emptying cannisters of OC spray and repeatedly striking an inmate who was handcuffed and not actively resisting, and (2) using excessive force against an inmate immediately after he stated he would file a grievance, was unlawful. *See Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was

11

unlawful in the situation he confronted."). Thus, Sgt. Haskell and Officer Sanders cannot avoid trial on grounds of qualified immunity.

For these reasons, the court:

(1) DENIES Wilderness' summary judgment motion (ECF 96);

(2) GRANTS in part and DENIES in part the defendants' summary judgment motion (102);

(3) DISMISSES Officer Grams, Officer Frazier, Officer Ramos, Sergeant Hilliker, Officer Guydon, and Officer Sims from this lawsuit; and

(4) REMINDS the parties this case is now proceeding on Wilderness' remaining claims:

   a. against Sergeant Haskell and Officer Sanders in their personal capacities for monetary damages for using excessive force against him in violation of the Eighth Amendment on or about March 24, 2021; and

   b. against Sergeant Haskell and Officer Sanders in their personal capacities for monetary damages for violating his rights under the First Amendment by retaliating against him for his statements indicating that he intended to file a grievance.

SO ORDERED on September 22, 2025.

/s/ Philip P. Simon  
JUDGE  
UNITED STATES DISTRICT COURT